IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WALTER JOEL SILVA-ARGUETA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action 1:26-cv-29 (RDA/WBP) |
| | ) | |
| PAMELA BONDI, *et al.* | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

This matter comes before the Court on Petitioner Walter Joel Silva-Argueta's ("Petitioner") Emergency Motion for a Temporary Restraining Order ("TRO Motion") and Motion for Leave to File Supplemental Exhibits. Dkts. 4, 8. On January 7, 2026, Petitioner filed an Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, alleging that he is a legal permanent resident and is being unlawfully detained at the Farmville Detention Center. Dkt. 3. Respondents opposed the Petition and asserted that Petitioner was properly detained. Dkt. 10. For the reasons set forth below, the Motion for Leave is GRANTED, the TRO Motion is DENIED, and the Petition[1] is GRANTED-IN-PART and DENIED-IN-PART.

---

[1] Petitioner filed a Petition (Dkt. 1) and what he called an Amended Petition (Dkt. 3). Although Petitioner titled the second filing as an "Amended Petition," it is clear from the substance of that document that Petitioner intended that document to supplement rather than supplant his Petition. Petitioner specifically indicated that the second filing was intended to "address critical developments that underscore the fundamental illegality of his continued detention." Dkt. 3 at 1. Furthermore, the Amended Petition "incorporates by reference all allegations, arguments, and legal authority set forth in his original Petition" and "supplements those arguments with new facts." *Id.* at 4.

1

## I.  BACKGROUND

Petitioner is a native and citizen of El Salvador and entered the United States on or around 2019. Dkt. 1 at 2.  He was processed for expedited removal and then released on bond.  *Id.*  In January 2020, United States Citizenship and Immigration Services ("USCIS") approved Petitioner's Special Immigrant Juvenile Status ("SIJS") and he was granted deferred action.  *Id.* On February 16, 2022, an immigration judge ("IJ") dismissed the immigration case without opposition from the Department of Homeland Security ("DHS").  *Id.*

On June 27, 2025, Petitioner was detained.  *Id.*  U.S. Immigration and Customs Enforcement ("ICE") then issued Petitioner a new Notice to Appear in July 2025.  *Id.*  In July 2025, an IJ denied Petitioner's bond request.  *Id.*  A few months later, however, an IJ approved Petitioner's adjustment of status based on his previous SIJS petition, converting Petitioner into a legal permanent resident ("LPR").  *Id.*

DHS reserved appeal and the appeal was due on December 26, 2025.  Dkt. 10 at 5.  On December 17, 2025, DHS filed an appeal with the Board of Immigration Appeals ("BIA").  *Id.* On January 6, 2026, the BIA rejected the appeal due to an error.  *Id.*  That same day, DHS issued a corrected Notice of Appeal on January 6, 2026.  *Id.*  Also on January 6, 2026, Petitioner filed his Petition challenging his ongoing detention.  Dkt. 1.

The next day, the BIA accepted DHS's corrected Notice of Appeal.  Dkt. 10 at 5.  Petitioner also filed an Amended Petition asserting that the BIA's acceptance of the appeal was *ultra vires*. Dkt. 3.  Petitioner also filed the TRO Motion.  Dkt. 4.  The next day, Petitioner filed a Motion to Supplement the Record to include the appeal rejection notice and DHS's corrected Notice of Appeal.  Dkt. 8.

On January 8, 2026, the Court issued a scheduling order.  Dkt. 9.

On January 13, 2026, Respondents filed their Opposition. Dkt. 10. Respondents argue that the decision granting Petitioner LPR status is not final due to DHS's appeal. *Id.*

On January 16, 2026, Petitioner filed his Reply. Dkt. 12.

On January 20, 2026, this Court issued an Order directing the parties to brief this Court's jurisdiction. Dkt. 14. On January 22, 2026, Petitioner filed his supplemental brief. Dkt. 15. On January 28, 2026, Respondents filed their supplemental brief. Dkt. 16.

On February 7, 2026, Petitioner filed a Notice of Hearing, requesting a hearing on February 25, 2026. Dkt. 17.

## II.  LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.  DISCUSSION

As a threshold matter, the Court must determine whether it has jurisdiction to review all of the matters raised in the Petition. As the Court views it, there are two separate issues raised: (i) the matter of Petitioner's LPR status; and (ii) Petitioner's continued detention. The Court will address each in turn.

The Immigration and Nationality Act (the "INA") provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This section is colloquially known as the "zipper clause" and, as this Court has previously held, whether a petitioner is "properly involved in removal proceedings" is a question that implicates Section 1252(b)(9)'s jurisdiction-stripping provisions.

Here, Petitioner argues that his LPR status is final and, thus, the government lacks statutory authority to detain him under 8 U.S.C. §§ 1225(b) or 1226(a). Dkt. 1. But Respondents argue that DHS's appeal stayed the IJ's decision granting Petitioner LPR status. Dkt. 10 at 5; *see also* 8 C.F.R. § 1003.6(a). Thus, the question over which the Court must determine it has jurisdiction is whether Petitioner can challenge, in these habeas proceedings, the BIA's determination to accept DHS's appeal, which was timely filed, rejected, and refiled after the time to appeal had run. The BIA's determination in this regard is part of "removal proceedings" and, thus, outside of this Court's jurisdiction.

Petitioner's argument is essentially that DHS's appeal (and therefore the lack of finality of his LPR status) is invalid. But under Section 1252(b)(9), this Court is not the proper jurisdiction to make such a finding. *Cf. Cohen v. Chertoff*, 280 F. App'x 611, 612 (9th Cir. 2008) (recognizing district court "had no jurisdiction had no jurisdiction to consider the validity of the reinstatement order in a habeas petition"). Section 1252(b)(9) is meant to preclude "piecemeal litigation" and a "repackage[ing]" of claims. *Khalil v. President*, 164 F.4th 259, 275 (3rd Cir. 2026). Here, the BIA has asserted jurisdiction over DHS's appeal and, presumably, Petitioner will challenge the timeliness of the appeal there. For purposes of this Court's jurisdiction, however, this Court cannot

second guess the BIA's determination to accept the appeal. Petitioner's citation to *Qatanani v. Attorney General*, 144 F.4th 485 (3rd Cir. 2025)[2] is not to the contrary, because that case was on appeal from the BIA and was *not* a habeas case. Thus, even applying Petitioner's own case law, the proper vehicle for Petitioner to challenge the BIA's decision is through an appeal to the Fourth Circuit – not a habeas petition. Accordingly, this Court lacks jurisdiction to determine the validity or invalidity of the BIA's determination. Thus, for purposes of considering this habeas petition, Petitioner does not have LPR status.[3]

But Petitioner's LPR status is not the sole basis on which Petitioner challenges his detention. Petitioner challenges his detention under the Fifth Amendment to the U.S. Constitution to the extent that he is detained under 8 U.S.C. § 1225. Dkt. 1 at 18-19. Furthermore, Petitioner sought to have this Court declare that "Petitioner is detained under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A)." *Id.* at 23. This thus brings Petitioner's claim under the same analysis as the vast morass of habeas detention claims that this Court has considered and the Court is not deprived of jurisdiction under the INA to consider Petitioner's detention. *See Luna Quispe v. Crawford*, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025). Although Petitioner was originally encountered at the border (Dkt. 10-1 at 2), Petitioner's current detention comes years later when Petitioner was detained in this District, Dkt. 1 at 2.

---

[2] Petitioner cites *Qatanani* for the proposition that "the BIA cannot retroactively nullify a vested status through post-deadline procedural maneuvers." Dkt. 15 at 10.

[3] The TRO Motion rests on Petitioner having LPR status. Dkt. 4. Thus, having determined that the Court lacks jurisdiction to second-guess the BIA's acceptance of DHS's appeal and that the default is therefore a stay of the LPR decision, Petitioner cannot demonstrate a likelihood of success on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (recognizing that a grant of injunctive relief requires the movant to establish: (1) that the plaintiff will likely succeed on the merits; (2) that the plaintiff will likely suffer irreparable harm if the injunction is denied; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest). Accordingly, the TRO Motion will be denied.

With respect to the substance of his claim, Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a) rather than § 1225(b)(2), and that his constitutional due process rights are being violated because the mandatory detention provision of § 1225(b)(2) does not apply to him. In their Opposition, Respondents argue that Petitioner's detention is lawful and constitutional under the INA because Petitioner is detained under 8 U.S.C. § 1225(b)(2) and not 8 U.S.C. § 1226(a). Moreover, Respondents argue that because Petitioner was not legally granted entry into the country and because he is seeking LPR status, he is still "seeking admission," making § 1225(b)(2) the appropriate statute to apply to his detention.

This Court observes that the parties' arguments are substantially similar to others made in recent habeas cases in this District.[4] Here, like there, the dispositive issue is reduced to whether Petitioner's detention is governed by the mandatory detention provisions in 8 U.S.C. § 1225(b)(2) or the discretionary detention provisions in 8 U.S.C. § 1226(a). This Court finds that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures. *See, e.g., Singh v. Lyons, et. al.*, 2025 WL 2932635 at *4 (E.D. Va. Oct. 14,

---

[4] *See, e.g., Hasan v. Crawford*, -- F. Supp. 3d --, 2025 WL 2682255 (E.D. Va. 2025) (Brinkema, J.); *Luna Quispe v. Crawford*, 2025 WL 2783799 (E.D. Va. Sep. 29, 2025) (Trenga, J.); *Quispe-Ardiles v. Noem*, 2025 WL 2783800 (E.D. Va. Sep. 30, 2025) (Nachmanoff, J); *Vargas Nunez v. Lyons*, 1:25-cv-1574, Dkt. 10 (E.D. Va. Oct. 1, 2025) (Brinkema, J.); *Diaz Gonzalez v. Lyons*, 1:25-cv-1583, Dkt. 8 (E.D. Va. Oct. 1, 2025) (same); *Gomez Alonzo v. Lyons*, 1:25-cv-1587, Dkt. 16 (E.D. Va. Oct. 1, 2025) (same); *Perez Bibiano v. Lyons*, 1:25-cv-1590, Dkt. 8 (E.D. Va. Oct. 2, 2025) (same); *Ortiz Ventura v. Noem*, 1:25-cv-1429, Dkt. 16 (E.D. Va. Oct. 2, 2025) (Nachmanoff, J.); *Lopez-Sanabria v. Bondi*, 1:25-cv-1511, Dkt. 9 (E.D. Va. Oct. 3, 2025) (same); *Guerra Leon v. Noem*, 1:25-cv-1634, Dkt. 12 (E.D. Va. Oct. 8, 2025) (Brinkema, J.); *Maldonado Merlos v. Noem*, 1:25-cv-1645, Dkt. 11 (E.D. Va. Oct. 9, 2025) (same); *Alfaro v. Lyons*, 1:25-cv-1569, Dkt. 11 (E.D. Va. Oct. 11, 2025) (Trenga, J.); *Singh v. Lyons*, 1:25-cv-1606, Dkt. 6 (E.D. Va. Oct. 14, 2025) (same); *Teyim v. Perry*, 1:25-cv-1615, Dkt. 9 (E.D. Va. Oct. 15, 2025) (Nachmanoff, J.); *Arevalo Paniagua v. Simon*, 1:25-cv-1714, Dkt. 9 (E.D. Va. Oct. 29, 2025) (Alston, J.); *Boquin Oliva v. Noem*, 1:25-cv-1592, Dkt. 12 (E.D. Va. Oct. 29, 2025) (same); *Quintero Flores v. Noem*, 1:25-cv-1614, Dkt. 9 (E.D. Va. Oct. 29, 2025) (same); *Aguilar-Cruz v. Noem*, 1:25-cv-1740, Dkt. 8 (E.D. Va. Oct. 29, 2025) (same); *Romero-Torres v. Perry*, 1:25-cv-1726, Dkt. 7 (Oct. 30, 2025) (same).

2025) (finding that Respondents' application of § 1225(b) to individuals like Petitioner already in the country contravenes the plain text and statutory scheme of the INA, which makes clear that § 1225(b)(2)(A)'s scope extends only to those individuals actively seeking admission into the country, and not those that have already entered the county).  As the Supreme Court held in *Jennings v. Rodriguez*, § 1226(a) is the "default rule," which governs "aliens already in the country" who are subject to removal proceedings, whereas § 1225(b) governs "aliens seeking admission into the country." 583 U.S. 281, 288–89 (2018).[5] Since Petitioner entered the country in approximately 2019, he falls into the category of "aliens already in the country" subject to the discretionary detention provisions in § 1226(a).[6]

Seeking to avoid this conclusion, Respondents rely on the fact that Petitioner is seeking LPR status.  But, as made clear by the declaration submitted by Respondents, Petitioner was *not* seeking such status at the time of his detention – he only sought such status in response to his detention. Dkt. 10-1 at 5 (noting that Petitioner sought LPR status on October 6, 2025).  Moreover, the immigration proceedings that arose from that initial encounter were dismissed.  Dkt. 1 at 2; Dkt. 10-1 at 3 (noting the IJ dismissed the removal proceedings).  Consistent with the authority from *this* District that this Court has already cited, district courts routinely hold that seeking to remain in the United States after living her "does not meant that he was 'seeking admission' at the

---

[5] The scheme developed by Congress, as interpreted in *Jennings*, affords more protections to aliens who make it past the border and deeper into the United States without being processed by immigration authorities than those stopped at the border.  The Court finds this odd and questions the incentives that it creates.

[6] Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion, that decision is not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020).  Moreover, of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here." *Demirel v. Fed. Det. Ctr. Phila.*, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "the law is clear").

time of arrest." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 309 (D. Mass. 2025) (citing cases) (granting petition and finding petitioner held under Section 1226, even where petitioner was applying for cancellation of removal). As courts recognize, although it is technically possible for an individual to be an "arriving alien" notwithstanding a presence in this country for an extended period, such facts are not present here and, because Petitioner was not an arriving alien seeking admission at the time of his arrest, Section 1225 does not apply. *See Martinez v. Hyde*, 2025 WL 3152847, at \*6-\*9 (D. Mass. Nov. 12, 2025).[7]

Having determined that Petitioner's detention is governed by § 1226(a), the Court must consider whether his continued detention absent a bond hearing violates his due process rights. In that regard, the Court concludes that for the same reasons the court found in *Luna Quispe*, 2025 WL 2783799 at \*7–9, Petitioner's continued detention under § 1226 without a bond hearing violates his substantive and procedural due process rights. For the above reasons, Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, and the Court finds that Petitioner is entitled to a bond hearing before an immigration judge.

## IV. CONCLUSION

For all of the reasons above, the Petition (Dkt. 1) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that the Petition is DENIED insofar as it seeks to rely on or seeks a determination of Petitioner's LPR status; and it is

---

[7] Respondents reliance on *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025) is unpersuasive. The *Vagas Lopez* Court's conclusion that, because the petitioner wished to stay in this country he automatically constituted an applicant for admission notwithstanding his presence in this country for years, is out of step with statutory and case authority and the conclusions reached by judges in this District in a number of cases.

FURTHER ORDERED that the Petition is GRANTED insofar as it seeks a determination that Petitioner is detained pursuant to 8 U.S.C. § 1226(a); and it is

FURTHER ORDERED that the TRO Motion (Dkt. 4) is DENIED; and it is

FURTHER ORDERED that the First Motion for Leave (Dkt. 8) is GRANTED; and it is

FURTHER ORDERED that Petitioner be provided with a bond hearing by an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of this Order; and it is

FURTHER ORDERED that Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that in the event Petitioner is released on bond by an Immigration Judge, Respondents are ENJOINED from rearresting Petitioner, unless (1) he has committed a new violation of any federal, state, or local law, (2) he has failed to attend any properly noticed immigration or court hearing, (3) he is subject to detention pursuant to a final order of removal, or (4) the order granting bond is vacated or revoked on a ground other than that Petitioner is detained under § 1225(b)(2).

The Clerk is directed to send copies of this Order to all counsel of record and to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
February 11 , 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

9